UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD AYOTTE,

        No. 13-15084

    Plaintiff,        District Judge David Lawson

v.        Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Edward Ayotte ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #9] and Plaintiff's Motion for Summary Judgment DENIED [Docket #8].

## I.   PROCEDURAL HISTORY

Plaintiff applied for DIB on April 13, 2012, alleging disability as of March 21, 2012 (Tr. 107). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held

on March 20, 2013 in Mount Pleasant, Michigan before Administrative Law Judge ("ALJ") JoErin O'Leary (Tr. 27). Plaintiff, represented by attorney Aaron Lemmens, testified, (Tr. 31-46), as did vocational expert ("VE") Mr. Swick (Tr. 46-50). On June 14, 2013, ALJ O'Leary found Plaintiff not disabled (Tr. 13-22).

The transcript does not contain the final determination by the Appeals Council. However, Defendant does not contest that Plaintiff exhausted his administrative remedies or contend that he failed to timely file a civil action. *See Defendant's Brief,* 2, *Docket #9*. Plaintiff filed suit in this Court on December 16, 2013.

## II. BACKGROUND FACTS

Plaintiff, born January 27, 1974, was 39 at the time of administrative decision (Tr. 22, 107). He completed high school and worked previously as an auto body worker/painter, driller, construction worker, stocker, and truck washer (Tr. 131-132). In his application for benefits, he alleges disability as a result of a winged scapula[1] (Tr. 131).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He had not worked since March, 2012 but currently received sick leave pay of approximately $740 each week (Tr. 31-32). He was unable to work due to "winging

---

[1] A winged scapular is characterized by the a protrusion of the scapula or shoulder blade which can result in "shoulder blade pain with pressure . . ." http://www.sportsinjury clinic.net/sport-injuries/ shoulder-pain/winged-scapula (last visited October 15, 2014). Where the condition is caused by "an injury resulting in nerve damage, the patient may have limited shoulder elevation as well as shoulder blade pain." *Id.*

scapula," with nerve damage to the spine caused by earlier radiation treatments (Tr. 33). He experienced "tremendous pain all the time" (Tr. 33). Although he was right-handed, his condition required him to do all lifting and reaching with the left arm (Tr. 33). He was unable to lift even a box of cereal with his right arm (Tr. 33).

Plaintiff experienced "flare-ups" of his back condition before the onset of a storm (Tr. 34). His back condition resulted in an even number of "good" and "bad" days, but the shoulder condition caused "constant" pain (Tr. 34). His shoulder pain was exacerbated by any shoulder activity (Tr. 34-35). He performed self care activities with difficulty (Tr. 35). He did not perform any household chores (tr. 35).

Plaintiff was able sit or stand in one position for up to 30 minutes (Tr. 35). His ability to lift with the left arm was limited to four pounds (Tr. 35-36). He did not sleep more than three hours at night but regularly took half-hour or longer naps every "three to four hours" (Tr. 36). His shoulder condition required him to climb stairs slowly (Tr. 37). His former condition of Hodgkin's lymphoma, for which he had received the radiation, treatment had been in remission since 1991 (Tr. 37).

Since experiencing shoulder problems, Plaintiff had "half the energy" he had before the alleged onset date (Tr. 37). Due to his physical problems, he would be required to miss work at least three days a month (Tr. 38). Steroid injections to the shoulder caused an allergic reaction and did not reduce his pain (Tr. 39). After engaging in physical therapy for two months, he had been advised by another source that therapy would worsen his condition

(Tr. 39-40). He had been told by Cleveland Clinic staff that his shoulder was inoperable (Tr. 39). He attributed his condition to nerve damage occurring at the time he had radiation treatment for the lymphoma and a recent work-related injury (Tr. 39). Plaintiff was currently contemplating a Workers' Compensation claim against his former employer (Tr. 41). His current treatment for his conditions was limited to twice-daily Vicodin (Tr. 41). He had not seen a pain management specialist for the last six months (Tr. 43).

A treating physician issued a series of opinions stating that Plaintiff would be disabled for six weeks at a time (Tr. 43-44). The physician acknowledged that Plaintiff was permanently disabled but wrote disability statements in six-week increments to conform to the policy of Plaintiff's former employer (Tr. 43-44). As a result of muscle atrophy, Plaintiff experienced problems keeping his head raised (Tr. 44).

### B. Medical Records

#### 1. Treating Sources

November, 2011 imaging studies were negative for recurrence of Hodgkin's lymphoma (Tr. 169-170, 178-179, 291, 302).

In March, 2012, neurologist Jaime Ballesteros, M.D. examined Plaintiff, observing pain behavior in the right arm and winging of the right scapula (Tr. 204). Plaintiff exhibited "atrophy of the mid and lower trapezius region" (Tr. 204). Dr. Ballesteros gave Plaintiff a one-week work excuse (Tr. 211). An MRI of the cervical spine showed "mild to moderate bilateral foraminal narrowing at C5-C6" (Tr. 206, 287). An MRI of the thoracic spine

showed unremarkable results (Tr. 207, 288). Testing was negative for a recurrence of Hodgkin's lymphoma (Tr. 290, 295). In April, 2012, Plaintiff was diagnosed with winging scapula (Tr. 186). Primary care provider Sunil Nagpal, M.D. attributed the condition to "thoracic nerve paralysis or injury" (Tr. 186). He found that Plaintiff was unable to use his right hand to lift "anything" (Tr. 193). Dr. Nagpal opined that because Plaintiff was right-handed, he would be "unable to work . . ." (Tr. 193). The same month, Dr. Ballesteros extended Plaintiff's sick leave to June 10, 2012 (Tr. 208). Dr. Ballesteros opined that the right shoulder condition had been exacerbated by an "increased workload for the last three months" (Tr. 279).

Also in April, 2012, pain specialist Rama D. Rao, M.D. noted Plaintiff's report of severe neck and right shoulder and arm pain (Tr. 213). Dr. Rao noted that Plaintiff was not in acute distress but experienced a limited range of neck motion (Tr. 213). He noted good motor strength in the bilateral upper and lower extremities (Tr. 214). He diagnosed Plaintiff with suprascapular nerve neuralgia and recommended a nerve block (Tr. 214). A steroid injection was administered without complications later the same month (Tr. 216).

Physical therapy notes from the same month state that Plaintiff reported increased scapular pain after power washing his trailer (Tr. 228). May, 2012 physical therapy notes state that Plaintiff was "non-compliant" with the therapist's recommendations for right arm use (Tr. 231). A therapy discharge summary states that Plaintiff experienced only minimal improvement in his condition over the course of therapy (Tr. 238). The same month, Jeffrey

Housner, M.D. of University of Michigan Hospital noted that recent EMG studies of the upper extremities showed no "evidence of right cervical radiculopathy or nerve entrapment" (Tr. 241). Dr. Housner noted a full range of shoulder motion (Tr. 241, 310). Dr. Housner opined that he had "did not have anything further to offer" from a "non-surgical standpoint" (Tr. 241, 311). He noted that Plaintiff was not interested in a surgical consultation (Tr. 241).

In July, 2012, Eric Ricchetti, M.D. of the Cleveland Clinic examined Plaintiff, noting that the cause of the scapular winging was not apparent (Tr. 247, 313, 329). Imaging studies of both shoulders were unremarkable (Tr. 249). The same month, Dr. Ballesteros stated that Plaintiff should remain off work until August 31, 2012 (Tr. 253). The following month, Dr. Ricchetti opined that Plaintiff could undergo a surgical procedure to improve the shoulder condition, but at present should continue home exercises to see if the nerve condition resolved "on its own" (Tr. 316). In August, 2012, an MRI of the right shoulder was consistent with tendinosis with a "suspected posterior superior . . . labral tear" (Tr. 334, 337). In September, 2012, Mei Lu, M.D. of the Cleveland Clinic observed normal muscle tone and 5/5 strength with exception of the right scapular, where Plaintiff demonstrated mild weakness and difficulty with forward extension (Tr. 266, 320). Based on recent imaging studies (Tr. 334, 339) Dr. Lu found "no evidence of involvement of" brachial plexus components or the cervical spinal root" (Tr. 267, 321).

In January, 2013, Dr. Ballesteros examined Plaintiff, noting that University of Michigan and Cleveland Clinic staff did not recommend immediate surgery (Tr. 277). Dr.

Ballesteros observed "severe atrophy of the paraspinal muscles in the interscapular area and neck" resulting from radiation treatment for lymphoma (Tr. 277). He opined that Plaintiff's condition was permanent (Tr. 277).

### 2. A Non-Treating Source

In September, 2012, Anselmo Mamaril, M.D. completed a non-examining Physical Residual Functional Capacity Assessment of the treating records, finding that Plaintiff retained the ability to lift or carry 20 pounds occasionally and 10 frequently; sit, stand, or walk for up to six hours in an eight-hour workday; and an unlimited ability to push or pull (Tr. 157). Dr. Mamaril found that Plaintiff was limited to frequent (as opposed to *constant*) balancing, kneeling, crouching, and stair/ramp climbing; and occasional stooping and crawling (Tr. 258). Dr. Mamaril found that Plaintiff was unable to climb ladders, ropes, or scaffolds (Tr. 258). Plaintiff was limited to occasional overhead reaching, and limited to frequent reaching at shoulder level and below (Tr. 259). Dr. Mamaril found that Plaintiff should avoid all exposure to hazards such as machinery and heights (Tr. 260).

### 3. Records Submitted After the June 14, 2013 Decision (Tr. 342-353)[2]

In August, 2013, rehabilitation specialist Kavitha Reddy, M.D. examined Plaintiff, noting that Plaintiff had opted out of surgery recommended by Cleveland Clinic staff due to

---

[2]These records were not among those considered by the ALJ (Tr. 26). Under 42 U.S.C. § 406(g), records submitted after the administrative decision are subject to a narrow review by the reviewing court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). However, Plaintiff does not cite these records in his argument for remand. Further, my own review indicates that none of the records would provide a basis for remand.

his fear of right shoulder immobilization (Tr. 343). Plaintiff reported level "10" pain on a scale of 1 to 10 but noted that Dilaudid gave him "some pain relief" (Tr. 343). Dr. Reddy noted a slightly limited range of cervical motion but 5/5 strength in the upper extremities (Tr. 344). She recommended that Plaintiff follow up with a surgeon for the scapular winging (Tr. 345). She recommended that Plaintiff consult with a "psychiatrist/psychologist for anger and personality problems" (Tr. 345). Imaging studies of the right and left elbow and the right and left shoulder were unremarkable (Tr. 347, 349, 351, 353).

### C. Vocational Testimony

VE Swick characterized Plaintiff's former work as an auto body worker as skilled at the medium level of exertion (very heavy as actually performed by Plaintiff); driller, skilled/heavy (very heavy as described by Plaintiff); construction laborer, unskilled/very heavy; stocker, semiskilled/heavy; and truck washer and fueler, unskilled/medium (sedentary as described by Plaintiff[3] (Tr. 47-48, 165).

The ALJ then described a hypothetical individual of Plaintiff's age, education, and work experience:

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

> [T]his individual would be limited to sedentary exertional work.  They could not perform any overhead reaching.  The right dominant extremity would be limited to frequent but no constant handling and fingering.  They could not climb ladders or scaffolds.  They should not work around unprotected heights or dangerous moving mechanical parts.  They would have to avoid any type of occupational vibration.  And due to chronic pain, they would be limited to simple, routine tasks.  With those restrictions, would such an individual be able to perform the past work that you identified? (Tr. 49).

The VE responded that the limitations would preclude Plaintiff's past relevant work but would allow the above-described individual to perform the work of a "printed circuit board inspector" (1,039 positions in the State of Michigan); gate guard (1,029); and parking lot attendant (700) (Tr. 50).  The VE testified that if Plaintiff's professed inability to maintain regular attendance due to chronic pain were credited, all work would be precluded (Tr. 50).  The VE also testified that if Plaintiff's alleged need to lie down for two hours in an eight-hour workday were credited, all competitive employment would be precluded (Tr. 50).

### D.  The ALJ's Decision

Citing the medical records, ALJ O'Leary found that Plaintiff experienced the severe impairments of "bilateral winging of the scapula secondary to spinal nerve neuropathy," but determined that the condition did not meet or equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15-16).  The ALJ determined that the former condition of Hodgkin's lymphoma was in remission and was thus a non-severe impairment (Tr. 15).  The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following additional restrictions:

> He could not perform any overhead reaching; the right dominant extremity

>would be limited to frequent, but not constant, handling and fingering; and he could not climb ladders or scaffolds. He should not work around unprotected heights or dangerous moving mechanical parts. He would have to avoid any type of occupational vibration. Due to chronic pain, he would be limited to simple, routine tasks (Tr. 16).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform his past relevant work, he could work as a circuit board inspector, gate guard, or parking lot attendant (Tr. 20-21).

The ALJ discounted the allegations of disability, citing physical examination records showing minimal weakness of the neck muscles and normal bilateral forearm strength and 5/5 strength in the rotator cuff (Tr. 18-19). She noted that Plaintiff was able to walk without assistance (Tr. 18). She declined to accept Dr. Balleseros' incremental disability statements, noting that they were unsupported by an assessment of the functional limitations (Tr. 19-20). The ALJ remarked that although she held the record open for 30 days after the hearing to allow Plaintiff to "obtain a medical source statement from Dr. Balleseros," no statement had been received as of the date of the decision (Tr. 20).

### III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has

the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

Plaintiff argues that the ALJ improperly discounted his claims of limitation as a result of the shoulder and back conditions. *Plaintiff's Brief*, 6-12, *Docket #8* . Citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994), he contends that the ALJ's failure to include all of his professed limitations in the question to the VE invalidated the vocational job testimony.[4] *Id.*

---

[4]

For reasons unknown to the undersigned, Plaintiff's brief also includes a recitation of Sixth Circuit case law and the regulations pertaining to the deference accorded the opinion of a treating medical source. *Plaintiff's Brief* at 13–15. He is correct that the failure to provide a reasoned explanation for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS,* 710 F.3d 365, 376 (6th Cir.2013); *Wilson v. CSS,* 378 F.3d 541, 544–546 (6th Cir.2004) (citing § 404.1527(c) (2)). However, he cites no evidence or makes any effort to apply the "treating physician rule" to the facts of this case.

My own review of the records show that the ALJ's findings regarding the treating opinions were well articulated and supported. The ALJ found that Dr. Balleseros incremental work releases, created between March, 2012 and January, 2013 were "for a specific time period" only (Tr. 19). Even assuming Dr. Balleseros' repeated work releases could be construed to state that Plaintiff was permanently disabled (see Tr. 43-44) the ALJ noted that the work releases were unaccompanied by a statement of the functional limitations (Tr. 19). The ALJ remarked that although he held the record open for 30 days after the hearing so Plaintiff could obtain a medical source statement from Dr. Balleseros, none had been provided (Tr. 20). Likewise, the ALJ noted that that Dr. Nagpal's March, 2012 statement that Plaintiff was unable to work because he was "right-handed" did not provide a plausible basis for concluding that Plaintiff was unable to perform any job (Tr. 20, 193). Moreover, it appears that Dr. Balleseros' and Dr. Nagpal's opinions that Plaintiff was unable to work referred to his inability to return to his exertionally heavy former work, rather than all work.

Plaintiff is correct that vocational testimony given in response to an incomplete hypothetical question does not constitute substantial evidence. See *Teverbaugh v. Comm'r of Soc. Sec.*, 258 F.Supp.2d 702, 706 (E.D.Mich.2003) (Roberts, J)(citing *Gallant v. Massanari*, 2001 WL 912406 (D.Me.August 14, 2001)) ("'Reversible error for ALJ to rely upon jobs erroneously listed by VE that were inconsistent with Plaintiff's RFC'"). However, the question of whether the ALJ erred by omitting Plaintiff's professed limitations from the hypothetical question depends on the credibility determination. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include discredited allegations of limitation in hypothetical to VE).

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186,*2 (1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [5]

---

[5]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

(i) Your daily activities; (ii) The location, duration, frequency, and intensity

Substantial evidence supports the ALJ's credibility determination and by extension, the omission of some of the professed limitations from the question to the VE.  The ALJ discussed the clinical observations and imaging studies at length, finding that the records supported some degree of work-related limitation as a result of bilateral winging of the scapula and spinal nerve neuropathy (Tr. 15-20).  However, the ALJ did not err in finding same records, considered in their entirety, undermined Plaintiff's claim that he was unable to perform any work.  The ALJ noted that Plaintiff's claim that he had lost the use of his right upper extremity was contradicted by Dr. Lu's observation of normal muscle tone, 5/5 strength bilaterally, and only "mild weakness" (Tr. 18, 266).  The ALJ cited Dr. Balleseros' March, 2012 findings of only mildly weak neck flexors and full bilateral forearm strength (Tr. 18, 204).  The ALJ found that the allegations of disability were also undermined by the fact that Plaintiff had as yet received only conservative treatment (Tr. 19).  While Plaintiff cites November, 2011 oncology records (apparently to support his argument that the Hodgkin's lymphoma ought to have been included in the hypothetical limitations posed to the VE) *Plaintiff's Brief* at 11 (citing Tr. 169-170), these records actually show that the

---

of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

lymphoma remained in remission (Tr. 15, 169-170). The ALJ did not err in finding that the condition of Hodgkin's lymphoma did not create workplace limitations (Tr. 15).

As to the daily activities, the ALJ noted that Plaintiff claims of physical limitation stood at odds with his admitted ability to sweep, dust, mow the lawn, drive, perform light gardening activity, shop, and handle financial matters[6] (Tr. 19, 141-144). The ALJ observed that although Plaintiff alleged that he was unable to sit for more than 20 to 30 minutes, he did not experience any discomfort sitting through the 24-minute hearing (Tr. 19, 29, 52). The ALJ acknowledged that the objective studies and clinical observations showed some degree of impairment by limiting Plaintiff to sedentary work with a preclusion on all overhead reaching as well as limited handling and fingering with the right hand (Tr. 16, 48-49). Because the ALJ's credibility determination was well supported and explained, she did not err in rejecting Plaintiff's professed severity of limitation in crafting the hypothetical question and RFC. *See Stanley, supra,* 39 F.3d at 118-119. As such, a remand is not warranted.

My recommendation to uphold the Commissioner's decision on this application is not intended to trivialize the Plaintiff's shoulder and back conditions. Nonetheless, the ALJ's determination that he is not disabled from all gainful employment is within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should

---

[6] Plaintiff reported that he performed the household and outdoor chores at a slow pace (Tr. 141-144). However, his account of his own of his own activities is not inconsistent with the RFC for a limited range of exertionally sedentary work.

not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #9] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #8] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                               s/R. Steven Whalen
                                               R. STEVEN WHALEN
                                               UNITED STATES MAGISTRATE JUDGE

Dated: October 19, 2014

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on October 19, 2014, electronically and/or by U.S. mail.

                                               s/Carolyn M. Ciesla
                                               Case Manager to the
                                               Honorable R. Steven Whalen